1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    John Balla Pierce,                    )    CIV 15-0899-PHX-DLR (MHB)
                                           )
10              Petitioner,                )    **REPORT AND RECOMMENDATION**
                                           )
11   vs.                                   )
                                           )
12   Charles L. Ryan, et al.,              )
                                           )
13              Respondents.               )
                                           )
14   _____      )

15   TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT COURT:

16          Petitioner John Balla Pierce, who is confined in the Arizona State Prison

17   Complex-Lewis in Florence, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus

18   pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 9), and Petitioner

19   has filed a reply (Doc. 20).

20                               **BACKGROUND**[1]

21          After a jury trial, Petitioner was convicted of one count each of: (1) first-degree felony

22   murder, a class 1 dangerous felony; (2) attempted armed robbery, a class 3 dangerous felony;

23   (3) burglary in the first degree, a class 2 dangerous felony; and (4) conspiracy to commit

24   armed robbery, a class 3 dangerous felony, as well as one count of aggravated assault, a class

25   3 dangerous felony. (Exhs. A, N.) Petitioner was subsequently sentenced to natural life in

26

27

28          [1] Unless otherwise noted, the following facts are derived from the exhibits submitted
     with Doc. 9 – Respondents' Answer.

1  prison for murder, an aggravated term of 10 years for attempted armed robbery, and

2  aggravated terms of 15 years each for first-degree burglary, conspiracy to commit armed

3  robbery, and aggravated assault. (Exh. N.) The sentences for attempted armed robbery,

4  first-degree burglary and conspiracy to commit armed robbery were concurrent with each

5  other but consecutive to the fifteen-year sentence for aggravated assault; and all of these

6  sentences were ordered consecutive to the sentence of natural life. (Id.)

7      The Arizona Court of Appeals set forth the following facts in its Memorandum

8  Decision affirming Petitioner's convictions and sentences on direct appeal.

9      D.S. was contacted by Michael Carey on December 21, 2006, to give him a
   ride to "pick up money." D.S. and her friend, C.C., first picked up Sarah Duran
10  from school, then went to Angel "Moyo" Smiley's apartment complex. The
   girls left the complex but returned, and Pierce, Carey, and Smiley got into the
11  car. Pierce told D.S. that he was going to be giving them "directions." When
   she saw Carey placing a "big, black, long case" into the trunk of the car, she
12  asked him what it was and he told her it was a guitar or violin case that he
   "needed to drop ... off to pick up the money."
13

14  D.S. was directed to a different apartment complex where the boys talked with
   another friend. She was then directed to drive to an area near the victim's
15  house. Once the car was parked near some mailboxes, Carey asked Duran if
   she would "go up to the door and do [him] a favor." She agreed. She, along
16  with Pierce, Carey, and Smiley got out of the car. Carey told D.S. to "pop the
   trunk," went to it, pulled out the case and closed the trunk. He had a bandana
17  over his face. The four then walked around the corner towards the house.

18  The victim was inside his house with his teenage son, his teenage daughter and
   her eight-month-old child. Because his daughter was expecting some friends
19  to come by, the victim opened the door when Duran rang the doorbell. She
   then moved out of the way and the victim's daughter saw "the kid with the
20  shotgun pop[ ] around the corner." The daughter described "the kid with the
   shotgun" as a black male with a purple bandana covering his face.

21  The victim's daughter saw her father grab for the shotgun as she ran down the
   hallway to find her brother. She heard more than one gunshot as she fled down
22  the hall. After she woke her brother up, he quickly found his gun, and pulled
   his sister out of the hallway after a shot was fired at her. Looking through her
23  screaming daughter's window, she saw three people running away from the
   house. Once D.S. heard gunshots, she started driving away. C.C. asked her to
24  stop as she saw Duran running to the car. Duran then told D.S. to stop as
   Pierce, Smiley, and Carey were running towards the car with their bandanas
25  still covering their faces. Carey banged on the trunk, D.S. opened it, and threw
   in the shotgun. D.S. drove away quickly because the victim's son was shooting
26  at the car.

27  The victim had been shot in the face and back. He died in his home. Police
   found evidence that two handguns and a shotgun were fired. After being
28  informed of his juvenile *Miranda* rights, Pierce agreed to be interviewed and

1   stated the plan was to take guns, money and "weed" from the victim's house.
2   He explained his job was to get in the house to "go grab the s* *t," and he tried
    to gain access to the house to "do what I needed to do," which included
3   shooting someone if necessary "[for] my safety." He said "the dude f* * * *d
    up" by grabbing Carey's shotgun. He further explained he had been shown the
4   victim's house three days before the incident, and he was told which rooms to
    search.

5   (Exh. T.)

6       Petitioner thereafter filed a direct appeal raising the following claims: (1) the trial

7   court abused its discretion in denying Petitioner's request to strike the entire jury panel

8   during voir dire for alleged misconduct; (2) the trial court erred in failing to sever Petitioner's

9   trial from his co-defendants'; and (3) under Roper v. Simmons, 543 U.S. 551 (2005), the

10  imposition of a lifetime sentence violated the Eighth and Fourteenth Amendments to the

11  United States Constitution. (Exh. R.)

12      On January 21, 2010, the Arizona Court of Appeals denied relief. (Exhs. T, U.) In

13  doing so, the court reasoned that: (1) Petitioner had failed to satisfy his burden of

14  demonstrating that the jury was not fair and impartial; (2) the trial court did not err in failing

15  to sever the trials and any conceivable prejudice was cured by the trial court's jury

16  instructions; and (3) the imposition of a natural life sentence for first-degree murder by

17  defendants who were juveniles at the time of the commission of the offense did not constitute

18  cruel and unusual punishment under the Eighth Amendment. (Id.)

19      Petitioner thereafter filed a petition for review in the Arizona Supreme Court, which

20  was denied on September 21, 2010. (Exhs. V, W, Y.)

21      While his direct appeal was still pending, Petitioner filed his first notice of

22  post-conviction relief on August 11, 2008. (Exh. O.) The trial court, subsequently, dismissed

23  the proceeding three months later pursuant to Petitioner's own motion. (Exhs. P, Q.)

24      On March 14, 2013, almost two-and-a-half years after Petitioner's direct appeal

25  concluded, Petitioner filed a second notice of post-conviction relief arguing that: (1) under

26  Miller v. Alabama, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the imposition

27  of a lifetime sentence violated the prohibition against cruel and unusual punishment; and (2)

28  the trial court failed to properly consider, as a mitigating factor, psychological studies

1 | regarding the difference between juveniles and adults that his attorney had submitted at
2 | sentencing. (Exhs. Z, AA.)

3 | On March 27, 2013, the state trial court dismissed the proceeding as both untimely
4 | under state law and successive. (Exh. BB.)

5 | Petitioner then filed a petition for review arguing that: (1) the trial court failed to
6 | consider the evidence in mitigation submitted by counsel; and (2) the imposition of a life
7 | sentence violated the protection against cruel and unusual punishment. (Exh. CC.)

8 | On September 15, 2014, the Arizona Court of Appeals granted review, but denied
9 | relief, finding that Petitioner had failed to state a colorable claim for relief. (Exh. DD.) The
10 | Arizona Supreme Court summarily denied review on March 31, 2015. (Exh. FF.)

11 | In his habeas petition, Petitioner raises three grounds for relief. In Ground One,
12 | Petitioner asserts that sentencing a sixteen-year-old to life without the possibility of parole
13 | violates the Eighth Amendment prohibition against cruel and unusual punishment. In Ground
14 | Two, Petitioner claims that he did not commit murder, but was an accomplice, and that
15 | sentencing an accomplice to life without the possibility of parole violates the Eighth
16 | Amendment. In Ground Three, he asserts that the trial court violated the Eighth Amendment
17 | prohibition against cruel and unusual punishment because the trial court failed to mention
18 | and/or cite any mitigating factors. Petitioner contends that there are several mitigating factors
19 | the trial court must consider under Miller v. Alabama.

20 | **DISCUSSION**

21 | In their Answer, Respondents contend that Grounds One and Three fail on the merits
22 | and Ground Two is procedurally defaulted. As such, Respondents argue that Petitioner's
23 | habeas petition must be dismissed.

24 | \\\
25 | \\\
26 | \\\
27 | \\\
28 | \\\

**A.     Merits**

Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

**B.     Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S.

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004)

1  (claim not fairly presented when state court "must read beyond a petition or a brief ... that

2  does not alert it to the presence of a federal claim" to discover implicit federal claim).

3      Additionally, under the independent state grounds principle, a federal habeas court

4  generally may not review a claim if the state court's denial of relief rests upon an

5  independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32

6  (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state
> ground doctrine is grounded in concerns of comity and federalism. Without the
> rule, a federal district court would be able to do in habeas what this Court
> could not do on direct review; habeas would offer state prisoners whose
> custody was supported by independent and adequate state grounds an end run
> around the limits of this Court's jurisdiction and a means to undermine the
> State's interest in enforcing its laws.

11  Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for

12  presenting a valid claim deprives the state court of an opportunity to address the claim in

13  much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order

14  to prevent a petitioner from subverting the exhaustion requirement by failing to follow state

15  procedures, a claim not presented to the state courts in a procedurally correct manner is

16  deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

17      Claims may be procedurally barred from federal habeas review based upon a variety

18  of factual circumstances. If a state court expressly applied a procedural bar when a petitioner

19  attempted to raise the claim in state court, and that state procedural bar is both

20  "independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court

21  is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default

22  prevents the state court from reaching the merits of a federal claim, that claim can ordinarily

23

24  _____

25  [3] A state procedural default rule is "independent" if it does not depend upon a federal

26  constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

27  [4] A state procedural default rule is "adequate" if it is "strictly or regularly followed."
Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255,

28  262-53 (1982)).

1   not be reviewed in federal court.") (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977)

2   and <u>Murray v. Carrier</u>, 477 U.S. 478, 485-492 (1986)).

3        Moreover, if a state court applies a procedural bar, but goes on to alternatively address

4   the merits of the federal claim, the claim is still barred from federal review. <u>See</u> <u>Harris v.</u>

5   <u>Reed</u>, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of

6   a federal claim in an *alternative* holding. By its very definition, the adequate and independent

7   state ground doctrine requires the federal court to honor a state holding that is a sufficient

8   basis for the state court's judgment, even when the state court also relies on federal law. ...

9   In this way, a state court may reach a federal question without sacrificing its interests in

10   finality, federalism, and comity.") (citations omitted); <u>Bennett v. Mueller</u>, 322 F.3d 573, 580

11   (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as

12   here, the state court simultaneously rejects the merits of the claim.") (citing <u>Harris</u>, 489 U.S.

13   at 264 n.10).

14        A procedural bar may also be applied to unexhausted claims where state procedural

15   rules make a return to state court futile. <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1 (claims are barred

16   from habeas review when not first raised before state courts and those courts "would now

17   find the claims procedurally barred"); <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1230-31 (9th Cir.

18   2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only

19   when a state court has been presented with the federal claim,' but declined to reach the issue

20   for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally

21   barred.'") (quoting <u>Harris</u>, 489 U.S. at 263 n.9).

22        In Arizona, claims not previously presented to the state courts via either direct appeal

23   or collateral review are generally barred from federal review because an attempt to return to

24   state court to present them is futile unless the claims fit in a narrow category of claims for

25   which a successive petition is permitted. <u>See</u> Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding

26   claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar),

27   32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona

28   courts have consistently applied Arizona's procedural rules to bar further review of claims

1    that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See,

2    e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule

3    are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001)

4    ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in

5    several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S.

6    856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona

7    courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal

8    Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996)

9    (waiver and preclusion rules strictly applied in post-conviction proceedings).

10          The federal court will not consider the merits of a procedurally defaulted claim unless

11   a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for

12   his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995);

13   Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and

14   prejudice" test, a petitioner must point to some external cause that prevented him from

15   following the procedural rules of the state court and fairly presenting his claim. "A showing

16   of cause must ordinarily turn on whether the prisoner can show that some objective factor

17   external to the defense impeded [the prisoner's] efforts to comply with the State's procedural

18   rule. Thus, cause is an external impediment such as government interference or reasonable

19   unavailability of a claim's factual basis." Robinson, 360 F.3d at 1052 (citations and internal

20   quotations omitted). Ignorance of the State's procedural rules or other forms of general

21   inadvertence or lack of legal training and a petitioner's mental condition do not constitute

22   legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the

23   "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage

24   of justice exists when a Constitutional violation has resulted in the conviction of one who is

25   actually innocent. See Murray, 477 U.S. at 495-96.

26   \\\

27   \\\

28   \\\

1    **C.      Ground One**

2        Citing <u>Miller v. Alabama</u>, Petitioner asserts that sentencing a sixteen-year-old to life

3    without the possibility of parole violates the Eighth Amendment prohibition against cruel and

4    unusual punishment.

5        In June of 2012, the Supreme Court issued its decision in <u>Miller v. Alabama</u>, which

6    holds that "mandatory life without parole for those under the age of 18 at the time of their

7    crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment.'"

8    132 S.Ct. at 2460. Under <u>Miller</u>, "a sentencing scheme that mandates life in prison without

9    the possibility of parole for juvenile offenders" is unconstitutional because, "[b]y making

10   youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence,

11   such a scheme poses too great a risk of disproportionate punishment." <u>Id.</u> at 2469.

12       As a result, while <u>Miller</u> "does not categorically bar" imposing a sentence of life

13   imprisonment without the possibility of parole on a juvenile homicide offender, it does

14   mandate that the judge have the discretion to impose a lesser sentence, such as "a lifetime

15   prison term with the possibility of parole or a lengthy term of years." <u>Id.</u> at 2471, 2474.

16   Further, <u>Miller</u> requires that the judge's exercise of discretion be guided by an

17   "individualized consideration" of the offender's "age and age-related characteristics and the

18   nature of [his] crime ... ." <u>Id.</u> at 2469-70. Relevant issues for the judge's consideration could

19   include: the offender's "chronological age and its hallmark features – among them,

20   immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and

21   home environment that surrounds him"; "the circumstances of the homicide offense,

22   including the extent of his participation in the conduct and the way familial and peer

23   pressures may have affected him"; the "incompetencies associated with youth," such as "his

24   inability to deal with police officers or prosecutors (including on a plea agreement) or his

25   incapacity to assist his own attorneys"; and "the possibility of rehabilitation." <u>Id.</u> at 2468.

26   The Supreme Court expressed the expectation that, given "children's diminished culpability

27   and heightened capacity for change," granting the judge the discretion to determine a

28   proportionate punishment and requiring him or her to take these and related matters into

1   account in doing so will make "appropriate occasions for sentencing juveniles to th[e]

2   harshest possible penalty uncommon ." Id. at 2469.

3       In Montgomery v. Louisiana, ___ U.S. ___, 2016 WL 280758 (U.S. Jan. 25, 2016),

4   the Supreme Court held that its decision in Miller v. Alabama, announced a new substantive

5   constitutional rule that was retroactive on state collateral review.

6       However, despite the retroactive application of Miller, the Court finds that Miller is

7   inapplicable to the instant matter since Petitioner was not sentenced to life without the

8   possibility of parole pursuant to a mandatory sentencing scheme. See A.R.S. § 13-751(A)(2);

9   State v. Vera, 334 P.3d 754, 761 (Ariz. App. 2014) ("We cannot agree that Arizona's

10  sentencing statute violated the rule in Miller by preclud[ing] a sentencer from taking account

11  of an offender's age and the wealth of characteristics and circumstances attendant to it. ... To

12  the contrary, at all times relevant to this decision, the sentencing statute has provided what

13  appears to be a lesser alternative to a sentence of natural life ... .") (internal quotations

14  omitted). Arizona's sentencing scheme requires a court to determine whether to impose a

15  natural life sentence or a sentence without the possibility of release for 25 or 35 calendar

16  years only after considering aggravating and mitigating circumstances. See, e.g., A.R.S. §§

17  13-702(C), (D), -703.01(A), (Q).

18      Further, the record reflects that the trial court received the sentencing memoranda by

19  both parties, Petitioner's objection to the imposition of life without parole, the presentence

20  investigation, and had the opportunity to hear testimony of witnesses and argument of

21  counsel during the sentencing hearing. (Exhs. M, GG-JJ.) The transcript of the sentencing

22  proceedings specifically documents evidence, testimony, and argument of both aggravating

23  and mitigating factors to be considered by the judge, and includes the individualized

24  consideration of factors related to Petitioner's age set forth in Miller. (Exhs. M, DD.) Thus,

25  Petitioner was afforded the opportunity to present mitigating evidence, including that related

26  to his youth, and the trial court was required to consider it. See A.R.S. § 13-701(E).

27      Accordingly, because Miller is inapplicable in this case, the Arizona Court of

28  Appeals' rejection of Petitioner's claim was neither contrary to, nor an unreasonable

- 11 -

application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record before the state court. As such, the Court will recommend that Ground One be denied.

**D.     Ground Two**

In Ground Two, Petitioner claims that he did not commit murder, but was an accomplice, and that sentencing an accomplice to life without the possibility of parole violates the Eighth Amendment.

Ground Two was not properly presented to the state court via direct appeal or on collateral review. Thus, Ground Two was not fairly presented to the state courts, and Petitioner no longer has a remedy if he returned to state court. See Ariz.R.Crim.P. 32.4(a) (time bar). As a result, Ground Two is procedurally defaulted.

Petitioner has also not established grounds to excuse the procedural default by a showing of cause and prejudice, and he has not argued a fundamental miscarriage of justice. And, as stated previously, ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim.

Because Petitioner has not established any basis to excuse his procedural default of Ground Two, Petitioner's claim is barred from habeas corpus review. The Court will recommend that Ground Two be denied.

**E.     Ground Three**

In Ground Three, Petitioner asserts that the trial court violated the Eighth Amendment prohibition against cruel and unusual punishment because it "failed to mention and/or cite any mitigating factors" which, Petitioner' asserts it was required to consider under Miller.

As the Court has noted previously, under Miller, a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. See 132 S.Ct. at 2471. Here, Petitioner was afforded the opportunity to present mitigating evidence, including that related to his youth, and, under Arizona law, the trial court was required to consider it as a mitigating factor. See A.R.S. § 13-701(E). And

while the state trial court is required to consider mitigating evidence, it is not required to find that mitigating circumstances exist merely because such evidence is presented. See State v. Cazares, 72 P.3d 355, 357, ¶ 8 (Ariz. App. 2003).

Thus, the Arizona Court of Appeals' rejection of the claim asserted in Ground Three was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record before the court. The Court will recommend that Ground Three be denied.

### CONCLUSION

Having determined that Grounds One and Three fail on the merits, and Ground Two is procedurally defaulted, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure

1  timely to file objections to the Magistrate Judge's Report and Recommendation may result
2  in the acceptance of the Report and Recommendation by the district court without further
3  review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure
4  timely to file objections to any factual determinations of the Magistrate Judge will be
5  considered a waiver of a party's right to appellate review of the findings of fact in an order
6  or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72,
7  Federal Rules of Civil Procedure.

8        DATED this 29th day of February, 2016.

9

10                                    _____
                                      Michelle H. Burns
11                                    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28